UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Boxabl, Inc.,

    Plaintiff

v.

Brave Control Solutions Inc. et al.,

    Defendants

Case No.: 2:25-cv-00580-JAD-BNW

**Order Denying Motions to Dismiss for Lack of Personal Jurisdiction and for Leave to Conduct Jurisdictional Discovery**

[ECF Nos. 37, 46]

    Canadian company Brave Control Solutions Inc. agreed to "design, manufacture, and program highly specialized equipment for Boxabl," a Nevada corporation that builds prefabricated homes.[1] Boxabl claims that Brave failed to manufacture or deliver that equipment timely, so it sues Brave's former CEO and shareholder Brent McPhail for fraud.[2] It theorizes that, during a visit to Boxabl's Nevada factory, McPhail represented that "Brave would be using Boxabl's payments toward the manufacture of its specialized equipment" and "was ready, willing, and able to begin manufacturing,"[3] but those representations were fraudulent because Brave instead funneled that money for other uses.[4] McPhail moves to dismiss this suit against him for lack of personal jurisdiction. Boxable opposes that motion and alternatively countermoves for leave to conduct jurisdictional discovery. Because Boxabl has shown that some of McPhail's allegedly tortious conduct happened in Nevada, and McPhail has not shown

---

[1] ECF No. 1 at ¶ 11; ECF No. 45-1 at 2–3.

[2] ECF No. 1 at ¶ 12, ¶¶ 58–65. Boxabl also sued Brave, and default has been entered against Brave. *See* ECF No. 54.

[3] ECF No. 1 at ¶ 8.

[4] *Id*. at ¶ 16.

that exercising jurisdiction over him would be unreasonable, I deny the motion to dismiss and deny as moot Boxabl's discovery motion.[5]

## Background

Brent McPhail founded Brave, an automation company, in Ontario, Canada.[6] He was Brave's CEO until 2023 and served in an advisory capacity as a shareholder after that.[7] Boxabl is a Las Vegas company that manufacturers prefabricated homes.[8] Boxabl and Brave entered into a "Statement of Work Agreement" for Brave to "manufacture and deliver automated systems for Boxabl's prefabricated homes."[9] But Boxabl claims that despite the fact that it made millions of dollars in progress payments, Brave failed to pay the subcontractors, vendors, and suppliers that were working on its project, and Boxabl has received none of the promised equipment.[10]

Boxabl initiated this action in Michigan because it believed that McPhail would have contested Nevada's jurisdiction over him.[11] But Brave and McPhail moved to dismiss that Michigan matter under 28 U.S.C. § 1404(a) on the basis that forum-selection clauses in the various contracts between Brave and Boxabl unambiguously required that all lawsuits arising from their relationship be brought in Nevada.[12] Boxabl informed the Michigan court that it

---

[5] Because I find personal jurisdiction on this basis, I do not reach the parties' other arguments.
[6] ECF No. 37-1 at 3, ¶ 9.
[7] *Id.*
[8] *Id.* at 3, ¶ 10.
[9] *Id.*
[10] *Id.* at 4–5.
[11] ECF No. 14 at 14.
[12] ECF Nos. 11, 14, 17.

2

would not oppose transfer if McPhail "will not contest jurisdiction and venue there"[13] and McPhail and Brave responded that "Boxabl did not present with any actual argument as to why this should occur."[14] Nevertheless, the Michigan court transferred the case under § 1404(a), finding that "both parties effectively consented to transfer the case to the District of Nevada."[15]

Despite that perceived consent, McPhail now moves to dismiss, arguing that this court lacks personal jurisdiction over him. He argues that he's not a resident of Nevada, he has had no continuous or systematic contacts with this state, and "Boxabl fails to allege that [he] engaged in any acts substantially connected to Boxabl's claims that were directed at Nevada."[16] Boxabl responds that McPhail consented to personal jurisdiction based on the Michigan court's transfer order, the forum-selection clauses in the contracts between Brave and Boxabl subject him to this court's jurisdiction, and McPhail made some of his fraudulent misrepresentations while present in this state,[17] and it countermoves for leave to conduct jurisdictional discovery "in the event" that the motion to dismiss is not denied.[18]

---

[13] ECF No. 14 at 15.
[14] ECF No. 17 at 7.
[15] ECF No. 20 at 14 (considering that as "§ 1404(a) authorizes transfer and not dismissals, the Court will interpret that as consent to move the case to Nevada.").
[16] ECF No. 37 at 1–2.
[17] ECF No. 45 at 8–15.
[18] ECF No. 46.

**Discussion**

**I. This court can exercise personal jurisdiction over an out-of-state defendant only if he has a constitutionally sufficient connection to Nevada.**

The Fourteenth Amendment limits a forum state's power "to bind a nonresident defendant to a judgment of its courts."[19] So a federal-district court may only exercise jurisdiction over a nonresident defendant with sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[20] To determine its jurisdictional reach, a federal court must apply the law of the state in which it sits.[21] Because Nevada's long-arm statute reaches the constitutional zenith,[22] the question is whether jurisdiction "comports with the limits imposed by federal due process."[23] Federal Rule of Civil Procedure 12(b)(2) authorizes a court to dismiss a complaint for lack of personal jurisdiction.[24] A court may exercise jurisdiction over a nonresident defendant only if he has sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[25]

---

[19] *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

[20] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

[21] *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).

[22] Nev. Rev. Stat. § 14.065.

[23] *Walden*, 571 U.S. at 283 (quoting *Daimler AG*, 571 U.S. at 125).

[24] Fed. R. Civ. P. 12(b)(2).

[25] *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken,* 311 U.S. at 463).

## II.   Personal jurisdiction can be general or specific.

The law recognizes two categories of personal jurisdiction. The least common of these categories is "general jurisdiction," which exists when the defendant has "continuous and systematic" contacts with the forum state—contacts so pervasive that they "approximate" the defendant's "physical presence" in the forum state.[26] Boxabl does not appear to argue that McPhail has submitted himself to the general jurisdiction of this court, and nothing in this record suggests that McPhail has the continuous and systematic contacts with Nevada necessary to make such a finding. Indeed, Boxabl offers nothing to refute McPhail's declaration that he has never lived, owned property, or maintained any personal or business registration in this forum and has visited Nevada only four times over three years.[27]

The more common variety of personal jurisdiction is specific jurisdiction, which "focuses on the relationship among the defendant, the forum, and the litigation."[28] For specific jurisdiction to attach, "[t]he plaintiff cannot be the only link between the defendant and the forum,"[29] and "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum [s]tate" either.[30] The Ninth Circuit applies a three-prong test to determine whether the court may exercise specific jurisdiction over an out-of-state defendant: (1) the defendant "must have performed some act or consummated some transaction with the forum by which it purposefully availed itself of the

---

[26] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).
[27] ECF No. 37 at 3.
[28] *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation marks omitted).
[29] *Id.* at 285 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).
[30] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

privilege of conducting business" in the forum state; (2) the plaintiff's claims "must arise out of or result from [those] forum-related activities; and (3) the exercise of jurisdiction must be reasonable."[31]

The plaintiff bears the burden of satisfying the first two prongs.[32] In deciding whether a plaintiff has met its burden, the court must accept as true the uncontroverted allegations in its complaint, but a plaintiff cannot rely on "bare allegations" alone.[33] The court also may review affidavits or declarations submitted by either side,[34] but "conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor."[35] If the plaintiff satisfies those prongs, the burden shifts to the defendant for the third.[36]

### III. Boxabl's allegations that McPhail made fraudulent representations material to this litigation while visiting Nevada satisfy the first two prongs of the specific-jurisdiction test.

It's well settled in this circuit that the first two requirements of the minimum-contacts test are satisfied if a defendant commits part of a tort while present in the forum state.[37] The Ninth Circuit has applied this rule to cases with claims arising from a company's representative's statements in the forum state. So in *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, for

---

[31] *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002); *see also Schwarzenegger*, 374 F.3d at 802.

[32] *Schwarzenegger*, 374 F.3d at 802.

[33] *Id*. (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

[34] *Id*.

[35] *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (cleaned up).

[36] *Id.*

[37] *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 606 (9th Cir. 2018) (quoting *Paccar Int'l v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985)). McPhail invokes the *Calder* effects test, but the Ninth Circuit has made clear that the test applies only to out-of-state conduct that has an effect inside the forum state. *Id.*

example, a Washington-based Aero Law attorney attended a conference in Nevada and allegedly made defamatory statements about Freestream to individuals who were not Nevada residents.[38] The Ninth Circuit panel found jurisdiction in Nevada, reasoning that the "allegedly defamatory statement was made in Nevada, and the cause of action arises from that statement," and because Freestream alleged that the defendants "committed the intentional tort of defamation while present in the forum state, the first two prongs of the minimum-contacts test [we]re satisfied [t]here."[39]

Based on this tort-committed-in-the-forum-state rule, the Ninth Circuit has also found personal jurisdiction to lie in the forum where reliance is induced. In *Data Disc, Inc. v. Systems Technology Associates, Inc.*,[40] California company Data Disc contracted with STA, a Florida/Virginia corporation, to supply equipment, supplies, services, and documentation to STA.[41] When Data Disc withheld shipments pending payment assurances, STA's employee allegedly misrepresented the value of its contract rights, telling Data Disc they were "enough" to cover the debt.[42] Relying on that misrepresentation, Data Disc resumed shipments to its detriment.[43] The Ninth Circuit held that sufficient forum-related activity existed to satisfy the sufficient-minimum-contacts requirement because the reliance was induced from a California company operating inside California, and that activity was supported by affidavit.[44]

---

[38] *Id.* at 601–02.

[39] *Id.* at 603.

[40] *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977).

[41] *Id.* at 1283–84.

[42] *Id.*

[43] *Id.*

[44] *Id.* at 288.

Boxabl alleges that during a visit to its factory in Nevada, McPhail—like the lawyer in *Freestream*—made a representation that forms the basis for the fraud claim in this case.[45] That allegation is supported by the declaration of Boxabl's founder Galiano Tiramani:

> 7.  McPhail . . . personally flew to Boxabl's office in North Las Vegas in the summer of 2022 to take a tour of Boxabl and meet with its executives there.
>
> 8.  During this time while meeting with Boxabl in person in Nevada, McPhail made some of the misrepresentations stated in the Complaint in this action including that Brave would be using Boxabl's payments toward the manufacture of its specialized Equipment contemplated in the Contract and including labor and material and to pay for the materials and labor necessary for the manufacture of the Equipment and that Brave was ready, willing, and able to begin manufacturing specialized equipment for Boxabl.[46]

McPhail acknowledges in his responsive declaration that he came to Nevada for the specific purpose of touring Boxabl's factory.[47] And while he states very generally that he "had no substantive communication or engagement with anyone at Boxabl concerning contract performance, obligations, or payments" during that time, he does not deny this specific factual allegation by Tiramani.[48] Because the claims in this case arise, in part, from these alleged representations within Nevada, and these representations allegedly caused reliance from a Nevada company that intended to use the equipment for a Nevada manufacturing facility, like the *Freestream* and *Data Disc* courts, I find that the first two prongs of the specific-jurisdiction test are satisfied here.[49]

---

[45] ECF No. 45-1 at 3, ¶ 8.

[46] ECF No. 43 at 17.

[47] ECF No. 37-1 at 3, ¶ 7.

[48] ECF No. 51-1.

[49] McPhail argues that he acted only on behalf of Brave and never in his individual capacity. But *Calder v. Jones*, 465 U.S. 783 (1984), is clear that an officer who personally participates in

### IV. This court's exercise of jurisdiction over McPhail is reasonable, satisfying the third prong of the specific-jurisdiction test.

Once purposeful availment has been established, there is a "strong presumption" that assertion of jurisdiction is reasonable.[50] So to avoid the court's reach, McPhail must make a "compelling case" that other considerations render the exercise of jurisdiction unreasonable.[51] The Ninth Circuit uses a seven-factor balancing test for reasonableness that considers: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."[52]

The first reasonableness factor—the extent of the defendant's purposeful interjection into the forum state's affairs—weighs slightly in Boxabl's favor. McPhail argues that this factor favors him because Boxabl does not allege how he purposefully injected his actions into Nevada's affairs—only broad claims of misrepresentation without specifics of person, date, or place.[53] But the declaration of Tiramani provides those details and supports the allegation that

---

tortious acts directed at the forum cannot avoid jurisdiction. And here, McPhail is alleged to have been the primary participant in the Nevada-directed misconduct. Because his conduct in the state is sufficient, I need not, so I do not, address the parties' arguments concerning the *Calder* effects test, the impact of the forum-selection clauses in Brave and Boxabl's contracts, or the effect of the Michigan court's finding that the parties consented to jurisdiction in this forum.

[50] *Dole Food Co. v. Watts*, 303 F.3d 1104, 1117 (9th Cir. 2002).
[51] *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 477).
[52] *Freestream Aircraft*, 905 F.3d at 607.
[53] ECF No. 37 at 10.

McPhail traveled to Nevada to tour Boxabl's facility.[54] And McPhail's own declaration confirms that he "toured Boxabl's facility" on August 4, 2022.[55]

The second factor—the burden on McPhail to defend against this suit in Nevada—weighs against reasonableness. McPhail resides in Ontario.[56] But this factor isn't weighty.[57] As the Ninth Circuit noted in *Dole Food Co. v. Watts*, "modern advances in communication and transportation" mitigate the burdens of litigation away from home.[58] Those same mitigating factors apply here. So although this factor favors McPhail, it does so only slightly.

The third factor—conflict with the sovereignty of the defendant's state—requires examining Canada's sovereign interest in regulating McPhail's conduct.[59] Because this factor ordinarily favors foreign defendants, it's generally not controlling even when sovereignty concerns exist.[60] The degree of conflict with a foreign country's interests is not yet apparent here. McPhail argues that this case involves sovereignty conflicts because the bulk of the evidence necessary for prosecuting and defending the case is in the hands of a Canadian bankruptcy trustee.[61] But McPhail does not explain what evidence those proceedings might have that would be relevant to this case. Because he has failed to meet his burden in proving this factor, I find it neutral.

---

[54] ECF No. 43 at 17.
[55] ECF No. 51-1 at 4, ¶ 20.
[56] ECF No. 37-1 at 2.
[57] *Dole Food*, 303 F.3d at 1115.
[58] *Id.*
[59] *Id.*
[60] *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984) ("If given controlling weight, the sovereignty factor would always prevent suit against a foreign national in a United States court.") (cleaned up).
[61] ECF No. 37 at 11.

Perhaps the weightiest factor here is the fourth: Nevada's interest in adjudicating this dispute.  When the plaintiff resides in the forum state, that state has a strong interest in providing an effective means of redress for its residents who suffer tortious injury.[62]  McPhail argues that Nevada doesn't have a unique interest in this dispute because it's a "business dispute that any competent court can handle and resolve."[63]  But the Supreme Court of Nevada has held that Nevada has an interest in "adjudicating disputes for Nevada businesses"[64] and in "providing an effective means of judicial redress for its residents."[65]  Boxabl is a Nevada corporation with its principal place of business in Las Vegas, Nevada.[66]  So this factor weighs heavily in Boxabl's favor.

The fifth factor focuses on the location of the evidence and witnesses.[67]  The weight of this factor, too, has been discounted due to modern advances in communications and transportation.[68]  While McPhail argues that the evidence for this litigation is situated in Ontario,[69] most, if not all, of Boxabl's witnesses are likely to be in Nevada.  So this factor is neutral.

---

[62] *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006); *see also Brand v. Menlove Dodge*, 796 F.2d 1070, 1075–76 (9th Cir. 1986) (finding that the interest of forum state is much stronger when plaintiff is a resident).

[63] ECF No. 37 at 11.

[64] *Royce Int'l Broad. Corp. v. Gordon & Rees, LLP*, 2018 WL 5802003 (Nev. Oct. 31, 2018).

[65] *Trump v. Eighth Jud. Dist. Ct. of State of Nev. in & for Cnty. of Clark*, 857 P.2d 740, 750 (Nev. 1993).

[66] ECF No. 1 at 1.

[67] *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995).

[68] *Id.*

[69] ECF No. 37 at 11.

For the sixth factor, Boxabl notes that because there's no United States forum for this claim other than Nevada, were this court to decline jurisdiction, Boxabl would be forced to pursue international litigation, which can be more costly and inconvenient. So this factor weighs in Boxabl's favor. And for the last factor, Boxabl bears the burden of proving the unavailability of an alternative forum.[70] Boxabl conceded that, although no alternative forum may exist in the United States, an international court might hear the case."[71] But "[w]hether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable."[72]

Considering these factors in total, I find that they weigh in favor of Boxabl, so McPhail has not overcome the strong presumption that this court's exercise of jurisdiction over him is reasonable. The Ninth Circuit has upheld the assertion of jurisdiction when as few as "two of the reasonableness factors favored the plaintiff."[73] And in *Data Disc,* the court also found jurisdiction reasonable solely on California's interest in regulating tortious conduct and the purposefulness of STA's behavior in inducing reliance in California.[74] Here, only the second factor definitively favors McPhail, and those factors found in *Data Disc* exist here, too. And although some cause the scale to tip toward McPhail, none overwhelmingly shows that jurisdiction is unreasonable. I thus find that McPhail has failed to meet his burden of presenting a compelling case that this court's exercise of jurisdiction over him would be unreasonable.

---

[70] *Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*, 828 F.2d 1439, 1445 (9th Cir. 1987).

[71] ECF No. 45 at 15.

[72] *Arizona. Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 791 (9th Cir. 1987).

[73] *Dole Food*, 303 F.3d at 1117.

[74] *Data Disc*, 557 F.2d at 1289.

**Conclusion**

IT IS THEREFORE ORDERED that McPhail's motion to dismiss for lack of personal jurisdiction **[ECF No. 37] is DENIED.** Boxabl's countermotion for leave to conduct jurisdictional discovery **[ECF No. 46] is DENIED** as moot.

_____
U.S. District Judge Jennifer A. Dorsey
October 14, 2025